JOHNSTON, J., dissenting.

---

THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. ANNA FRENCH, *as Administratrix of the Estate of Frank French, deceased.*

No. 8210.

1. PLEADING—*Certainty—Harmless Error.* In the statement of a cause of action for negligence, where the charge is vague and general, it is error for the court to overrule a motion to require the pleading to be made more definite and certain; but when it appears that no prejudice resulted from the erroneous ruling, the judgment will not be reversed on that account.

2. DEPOSITIONS—*Informalities of Little Consequence.* Certain depositions were taken upon stipulations signed by counsel for the parties, the name of the plaintiff appearing as "Anna French" only, without any addition to indicate her representative capacity, and the name was so indorsed on the envelopes; but the defendant appeared by counsel and cross-examined the witnesses, and, on objection to the reading of the depositions, no showing was made that any other action had ever been commenced by Anna French against the defendant. *Held,* That the informalities enumerated are not of sufficient consequence to justify a reversal of the judgment.

3. VERDICT, *not Disturbed.* There being evidence in this case from which the jury might reasonably draw the inferences that the deceased brakeman was in the exercise of ordinary care, and that the engineer was not, the general verdict in the plaintiff's favor cannot be disturbed by this court on the ground of its lack of support by the evidence.

4. —— *Not Excessive.* Upon the facts disclosed by the record, this court cannot hold the verdict for $4,500 to be excessive.

*Error from Crawford District Court.*

FRANK FRENCH, a brakeman on the line of railway of the plaintiff in error, was killed at Severy, in Greenwood county, December 21, 1888, while engaged in putting two empty cars into a freight train on which he was running from Wichita to Neodesha. The road of the plaintiff in error runs east and west through Severy, and the Atchison, Topeka & Santa Fe railroad crosses it, running north and south. Two Y's, one east and one west of the crossing, extend northerly from the road of the plaintiff in error, connecting it with the Atchison, Topeka & Santa Fe railroad. At the west side of the street next west of the crossing there is a three-throw switch, whereby cars may be thrown upon the main line, or upon the west Y, or upon a switch known as the "house track," on the south side of the main line, extending eastwardly 300 or 400 feet to the depot contiguous to the crossing. This house track is connected with the main line only at the three-throw switch. About 100 feet, perhaps less, west of the three-throw switch there is another side-track on the south side of the main line, which extends 400 or 500 feet west. This is known as the "stock track," and connects with the main line at both ends. The crew consisted of Ralston, conductor, Mulvelhill, engineer, Beezley, fireman, Simons, head brakeman, and French, rear brakeman. When the train arrived at Severy shortly after noon, it was directed that the two empty cars standing on the house track be put into the train, which had stopped on the main line west of the easterly connection of the stock track. This could have been done without making a flying switch, but it would have required more time and work. The flying switch was the

quicker and easier method, though more dangerous than the other, and this was adopted, and thereby it became necessary in doing the work to run the engine in on the stock track, and throw the two empties onto the main line, ready to couple to the front of the train. Ralston took a position at the east switch-stand of the stock track to turn the switch. Simons was left with the train, while French went ahead to make the necessary head-end coupling of the engine to the empties. After this was done, French stood on the iron plate extending out a little beyond each side of the nose of the pilot. The cars were pushed eastwardly a short distance, in order to make the run sufficiently long to obtain the necessary speed, and then the engine, with the two cars attached, proceeded west, the engine running backward. At some point, perhaps in or near the street, the engine slacked a little so that French might pull the pin to uncouple the cars from the engine, which he did; and, immediately after the cars were uncoupled, the speed of the engine was suddenly increased, and French, who still had hold of the coupling-bar, lost his balance and fell off at or near the three-throw switch, the two empties running over and killing him instantly.

It was the theory of the plaintiff that it was the plan of the conductor and the engineer to make this flying switch; that, after the coupling was made, French stood on the south side of the coupling-bar and the nose of the pilot, thus bringing him on the engineer's side; that, after drawing the pin, the engineer suddenly increased the speed of his engine without any signal from French for that purpose, before he had time to brace himself; and that thereby he lost his balance and fell off. On the other hand, the defendant contends that French was or-

dered only to get out the empties and place them in the train, thus giving him a choice of methods, and that he pursued the more dangerous but quicker one; that he stood on the north side of the coupling-bar and the nose of the pilot, and gave signals to the fireman, who repeated them to the engineer; and that the checking of the engine in order to loosen the pin and the speeding on after the uncoupling were in response to signals from French.

The charge made against the railroad company in the petition is as follows:

"On the 21st day of December, 1888, through the negligence, carelessness and mismanagement of the engineer and other employees then employed in and about the running, handling and managing the said train of cars on which the said Frank French was then so employed and engaged as such brakeman, and which said employees were also in the employ of said defendant, he, the said Frank French, was then and there thrown from said cars and run over by said cars, and so bruised, wounded and injured that he then and there died."

The railway company filed a motion to require the plaintiff below to make her petition more definite and certain by stating in what the alleged negligence, carelessness and mismanagement consisted, and what employees, if any, were guilty of such negligence, carelessness, and mismanagement, giving the names and position of such employee or employees, and the acts of negligence, carelessness or mismanagement of which they may have been guilty. This motion was overruled by the court. Other facts appear in the opinion, filed March 7, 1896.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*W. B. Brayman,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The petition was good as against a demurrer, but the charge of negligence was vague and general, and the motion to make more definite and certain ought to have been sustained. (Civil Code, § 119 ; *H. & St. J. Rld. Co. v. Fox,* 31 Kan. 586, 590 ; *Mo. Pac. Rly. Co. v. Merrill,* 40 id. 404, 406 ; *A. T. & S. F. Rld. Co. v. O'Neill,* 49 id. 367, 385.) We think, however, that the error was not prejudicial to the defendant below, for the following reasons : The casualty occurred at midday, in the presence of several persons, and his fellow employees knew that French was killed by falling off the pilot and being run over by the cars, and before the trial of the case all the evidence offered on the part of the plaintiff relating to the occurrence was taken by deposition, and thus the defendant below had much better knowledge of the facts relied on by the plaintiff below than the court could have required to be set forth in any petition. *Mo. Pac. Rly. Co. v. Merrill,* supra, was an action for damages by fire. The charge of negligence was general, and the railway company asked that it be made more definite and certain by stating whether a freight- or passenger-train was charged with setting out the fire, and whether it was running east or west, and this court was of opinion that the motion should have been sustained ; but in the opinion the court says (p. 406) :

"The record discloses, however, that no prejudice resulted to the company from the ruling made. Some of the servants of the company were present when the fire escaped, and assisted in putting it out, and one of them reported to the company the cause and the extent of the injury. They had the same information as to which locomotive and train were passing

as Merrill had, and therefore the company suffered no inconvenience in this instance from the indefiniteness of the petition. As the court is invested with considerable discretion in passing on motions of this kind, and as no prejudice resulted to the company, the ruling of the court cannot be regarded as reversible error."

II. The defendant below filed motions to suppress the depositions of several witnesses, mainly on the ground that they were not properly entitled in this action. They were taken without formal notice, but upon stipulations signed by counsel for the parties, and these were entitled, "Anna French, plaintiff, v. The St. Louis & San Francisco Railway Company, defendant," and the title was so indorsed on the envelopes in which the depositions were transmitted. Counsel for the railway company say that they stipulated for taking depositions in a case in which Anna French was plaintiff in her individual capacity, and that they were used in a case wherein she sued as administratrix of the estate of Frank French, deceased. There is no suggestion, however, that Anna French ever brought suit in said district court against the defendant below in her individual capacity, and this could have been easily shown, if true. Counsel for the defendant below appeared on the taking of the depositions and fully examined the witnesses, and could not have been misled as to the case in which the depositions were to be used, and this defect is therefore of little consequence and should be disregarded. (Civil Code, § 140; *Laithe v. McDonald*, 7 Kan. 254; *Whitaker v. Voorhees*, 38 id. 71; *Babb v. Aldrich*, 45 id. 218.)

III. The plaintiff in error claims that no negligence was shown on its part, and that the death of Frank French was the result of his own negligence, or was

accidental, and, among others, the case of *McDermott
v. A. T. & S. F. Rld. Co.*, ante, p. 319, 43 Pac. Rep.
248, is cited as applicable.  There are some points of
similarity between this case and that.  In each a
brakeman was killed while making a flying switch,
by falling on the track and being run over by the
cars.  But in that case the jury found that the en-
gineer was under the control of the brakeman as to
slacking up and going ahead, and that the engineer
obeyed the signals given him by the brakeman ; and
it appears that the latter was on a car not seemingly
in a place of unusual danger when he was jolted off
at the crossing of another railroad track.  In the
present case, however, the brakeman was known by
the engineer to be in a place of unusual peril, with a
very slight foothold, and little opportunity of steady-
ing himself ; and the evidence on the part of the
plaintiff shows that the engine was moved suddenly
and rapidly after the pulling of the pin, without any
signal from French.  As to the plan of taking out the
cars and putting them in the train by the method of
a flying switch, the conductor testified that he did not
remember of giving any orders, but that it was just a
mutual understanding that it was necessary to do it
that way, and that they did the work just as they
had always done in taking cars out from that track to
place in a train ; and the fact that the conductor took
a position at the east switch-stand of the stock track is
a circumstance tending to show that he expected the
work to be done by means of a flying switch.  And if
this was the usual and quicker method, and that
which the conductor either ordered or acquiesced in,
we cannot declare, as a matter of law, that French
was guilty of negligence by participating in the work,
although it was not the safest method ; and whether

he was in the exercise of ordinary care or not was a question for the jury to determine; and there was evidence of negligence on the part of the engineer which, if credited by the jury, was sufficient to justify their general verdict in favor of the plaintiff below.

IV. The verdict was for the sum of $4,500, and the plaintiff in error claims that this is excessive. At the date of his death Frank French was 34 years of age, and his life expectancy was 32 years. He was the only son of the plaintiff, a widow, then 59 years of age, and was a single man, earning $60 to $75 per month, and he had resided with and wholly supported his mother for 10 years. The trial court approved the verdict, and it is not so excessive as to warrant interference by this court.

Some questions are raised upon the admission of testimony and as to certain answers to particular questions of fact, but we do not deem them material.

The judgment will be affirmed.

All the Justices concurring.